## Sgier et al. *v.* Phila. & Reading Ry. Co., Appellant.

*Negligence—Railroad companies—Automobiles—Safety gates— Operation—Presumption—Evidence — Circumstantial evidence — Res ipsa loquitur.*

1. Where a railroad appliance is in its proper place and performing its intended function, it is prima facie evidence that it is under the control of the company and this applies as well to a safety gate as to a locomotive.

2. It is the duty of a railroad company to exercise reasonable care in operating safety gates so as to protect the traveler on the highway from the cars and from the gates.  The gates should be operated with due regard to the safety of those crossing the tracks as well as of those about to enter thereon.

3. A recovery will be sustained where it appears that plaintiff, who was a passenger in an automobile about to cross defendant's four-track railroad at a public crossing, was struck and injured at the crossing by a safety gate which suddenly descended upon her

while the automobile was in the act of driving upon the track. There was no evidence as to who operated the gate, but at the time a train was approaching and near at hand and a man had just been seen in the gatehouse and there was no evidence that the gates operated automatically.

4. The violence and rapidity with which the gate was lowered and the fact that it struck the top of the automobile near the front were matters for the jury, and, while the mere happening of the accident did not raise a presumption of negligence, the circumstances shown were such as to make it a question of fact for the jury.

*Practice, C. P.—Motion to reduce charge to writing—Request for general exception — Failure to allege reasons — Presentation of points—Time for presentation—Refusal to receive—Acts of March 24, 1877, P. L. 38, and May 11, 1911, P. L. 279.*

5. Where no request is made that the charge of the court be reduced to writing and filed of record, error cannot be assigned thereto.

6. It is not error for the trial judge to refuse to grant a general exception to his charge where counsel requesting such general exception declines to allege any reason therefor as required by Act of May 11, 1911, P. L. 279.

7. It is not error for a trial judge to refuse to receive points for charge which are not presented as required by Act of March 24, 1877, P. L. 38, until after counsel have closed their arguments to the jury and the court has begun to deliver his charge.

Argued Jan. 10, 1918.   Appeals, Nos. 169 and 170, Jan. T., 1917, by defendant, from judgment of C. P. No. 2, Philadelphia Co., Sept. T., 1915, No. 3784, on verdict for plaintiffs, in case of Annie J. Sgier and Martin J. Sgier v. Philadelphia & Reading Railway Company. Before MESTREZAT, POTTER, STEWART, FRAZER and WALLING, JJ.   Affirmed.

Trespass to recover damages for personal injuries. Before BARRATT, P. J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff, Annie J. Sgier for $7,500, and for plaintiff, Martin J. Sgier for $3,500 and judgment thereon.   Defendant appealed.

*Errors assigned,* among others, were the refusal of defendant's motion for a new trial and for judgment n. o. v., the refusal of the court to grant a general exception to the charge, requested by counsel, without specifying any reason, and his refusal to receive points for charge presented after argument of counsel to the jury.

*Wm. Clarke Mason,* for appellant.—The burden was upon the plaintiffs to prove negligence, and, having failed to discharge the burden, judgment should have been entered for the defendant n. o. v.: Green v. Pittsburgh M. & G. St. R. Co., 219 Pa. 241; Gralka v. Worth Bros. Co., 245 Pa. 467; Lanning v. Pittsburgh Rys. Co., 229 Pa. 575; Clark v. Philadelphia Rapid Transit Co., 241 Pa. 437; Benson v. Philadelphia Rapid Transit Co., 248 Pa. 302; Douds v. Beaver Valley Traction Co., 54 Pa. Superior Ct. 477; McKenna v. Alabama & V. Ry. Co., 87 Miss. 652; Laven v. Moore, 211 Pa. 245; Johns v. Penna. Railroad Co., 226 Pa. 319; Joyce v. Black, 226 Pa. 408; Livingstone v. Pittsburgh Rys. Co., 64 Pa. Superior Ct. 593; Patterson Coal Co. v. Pittsburgh Rys. Co., 37 Pa. Superior Ct. 212; Ginn v. Penna. Railroad Co., 220 Pa. 552; Wall v. Lit, 195 Pa. 375; Bradley v. Lake Shore & M. S. Railroad Co., 238 Pa. 315.

Defendant was entitled to a general exception: Mastel v. Walker, 246 Pa. 65; Torak v. Philadelphia & R. Ry. Co., 60 Pa. Superior Ct. 248.

*Thomas James Meagher,* for appellees, cited: Dougherty v. Philadelphia Rapid Transit Co., 257 Pa. 118; Janock v. B. & O. R. R. Co., 252 Pa. 199; Hudson v. Lehigh Valley R. R. Co., 54 Pa. Superior Ct. 107; Feeney v. Long Island R. R. Co., 116 N. Y. 375; Atlantic Coast, Etc., Co. v. Grubbs, 113 Va. 214; Siever v. Pittsburgh, Etc., Co., 252 Pa. 1; McDonald v. Penna. R. R. Co., 253 Pa. 66; Gerg v. Penna. R. R. Co., 254 Pa. 316; Curtis v. Winston, 186 Pa. 492; Monaghan's Pa. Appellate Practice, p. 211.

OPINION BY MR. JUSTICE WALLING, February 25, 1918:

On November 7, 1915, the plaintiff, Mrs. Sgier, was a passenger in a Ford touring car going from Brooklyn, New York, to Philadelphia. The car was owned and driven by her uncle, Martin F. Brady. She sat with him, while Mrs. Brady and another lady occupied the rear seat. They were traveling on the Lincoln Highway, in Bucks County, going in a northerly direction, when they came to a four-track grade crossing of defendant's railway, at Glen Lake. The gates on both sides were up and, just before reaching the first or south gate, they stopped to look and listen and, finding the tracks apparently clear, started forward. When approaching the north gate it came down suddenly so that the iron bar suspended at the end thereof broke through the top of the car and inflicted serious injuries upon Mrs. Sgier. Mr. Brady testified that he saw a man in the watch-house, which stood near where they came to the crossing; but so far as appears no one saw him operate the gate. However, when it came down a bell was rung and a train was approaching within two or three hundred feet. Defendant submitted no evidence, but asked the court to direct a verdict in its favor; which was declined and the jury found for plaintiffs. This appeal is by defendant from the judgment entered thereon.

The case was for the jury. While there was no direct evidence that the gate in question was lowered by an employee of defendant, the circumstances warranted that conclusion. The gates were there to be operated on the approach of trains and one was then coming and a bell ringing. A man had just been seen in the gatehouse and so far as appears the gates do not operate automatically. Where a railroad appliance is in its proper place and performing its intended function, it is prima facie evidence that it is under the control of the company, and this applies as well to a safety gate as to a locomotive. The purpose of the gate is to protect the public, by moving downward and upward; and the presumption is that

such movements are under the control of the railroad company, and there is no evidence here to the contrary. It bears no analogy to the accidental fall of a trolley pole or of an electric wire.

Under the circumstances, the question as to the negligent operation of the gates was for the jury. It is the duty of a railroad company to exercise reasonable care in operating safety gates so as to protect the traveler on the highway from the cars and from the gates: Thompson on Negligence, Vol. 2, Sec. 1533. The rule as to the operation of safety gates is illustrated in Hudson v. Lehigh Valley R. R. Co., 54 Pa. Superior Ct. 107, 110, where it is stated in the opinion by Judge HENDERSON: "It was manifestly his [the gate keeper's] duty to lower the gates with due regard to the safety of persons who might be on the street or the sidewalk and when as in this instance it was known that a traveler was approaching the gate the full duty of the watchman was not performed when he lowered it without observing whether it was about to fall on a passer-by. The drop of the gate could easily have been arrested, and it was a question for the jury under the evidence whether the watchman exercised such care as the situation demanded." The gates should be operated with due regard to the safety of those crossing the tracks as well as of those about to enter thereon. It was not the lowering of the gates, but the manner in which it was done, that tended to show negligence. The accident happened at noon. Plaintiff's automobile had just passed the gatehouse and must have been in full view of the gatekeeper. If he failed to see it, it was evidence of negligence, as it also was if he saw the automobile and dropped the gate upon it. The violence and rapidity with which the gate was lowered, and the fact that it struck the top of the automobile near the front, were also matters for the jury. While the mere happening of the accident did not raise a presumption of negligence, the circumstances shown were such as to make that a question of fact. Negligence may be established

by circumstantial evidence: Dougherty v. Philadelphia Rapid Transit Co., 257 Pa. 118; Janock v. B. & O. R. R. Co., 252 Pa. 199.

The undisputed evidence is that before entering upon the crossing the automobile stopped and the driver and plaintiff looked and listened for approaching trains; then, the gates being up, they went forward and the north gate did not start downward until they were nearly under it.   So there is nothing in the case to convict Mrs. Sgier of contributory negligence, certainly nothing that the court could declare to be such.

We cannot review the action of the trial court in passing upon an application for new trial except in case of manifest abuse of discretion, which is not shown here. So far as appears no request was made that the charge of the court be reduced to writing and filed of record, hence error cannot be assigned thereto: Lindsay v. Dutton, 227 Pa. 208; Foley v. Philadelphia R. T. Co., 240 Pa. 169; Sikorski v. Philadelphia and Reading Ry. Co., 260 Pa. 243; Curtis v. Winston, 186 Pa. 492.   Even if properly before us, we find nothing in the charge that would justify a reversal.

Before the jury retired, defendant's counsel asked for a general exception to the court's charge, but refused to allege any reason therefor and the court declined to grant such exception.   After careful examination we are clearly of the opinion that the court did not err in so doing.   Section 2 of the Act of May 11, 1911, P. L. 279, provides, inter alia, "Exceptions may be taken, without allowance by the trial judge, to any part or all of the charge, or to the answers to points, for any reason that may be alleged regarding the same in the hearing of the court, before the jury retires to consider its verdict." The manifest purpose of requiring that the reason be stated in the hearing of the court is to give the latter an opportunity to correct errors if any and avoid a mistrial. While the judge may grant a general exception to the charge he is not required to do so unless some reason is

alleged. As the question is fully considered in the opinion of this court by Brother MOSCHZISKER, recently filed, in Sikorski v. Philadelphia & Reading Railway Company, supra, we refrain from its further discussion.

At the trial in the court below, after the evidence was closed and the arguments of counsel finished, and when the trial judge was proceeding to charge the jury, defendant's counsel, having previously submitted a request for binding instructions, presented additional points which he requested the court to answer. After some discussion the trial judge declined to receive such points because not presented in time. The Act of March 24, 1877, P. L. 38, 3 Stewart's Purdon 3357, and also Philadelphia Court Rule 139, require that the points for charge be handed to the court before the close of the argument to the jury. The requirement is reasonable as the trial judge should have some time to consider the legal questions so raised, both in justice to himself and the litigants. The points were doubtless submitted in good faith but too late to require answers.

The assignments of error are overruled and the judgment is affirmed.