Baldwin, Appellant, *v*. Transitone Automobile
Radio Corporation.

Argued December 6, 1933.   Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Philip L. Leidy,* with him *James A. Montgomery, Jr.,* and *Pepper, Bodine, Stokes & Schoch,* for appellant.

*Wm. Barclay Lex,* with him *Philip Dechert* and *Hepburn & Norris,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, January 2, 1934:

This is an action to recover the amount due on a written salary contract which plaintiff alleges defendant assumed. The jury rendered a verdict in plaintiff's favor for $10,741.34. The court below entered judgment non obstante veredicto for defendant. Plaintiff appeals.

On February 17, 1930, plaintiff entered into a contract with Automobile Radio Corporation under which he was employed as its sales manager for three years, commencing March 1, 1930, at a salary of $10,000 a year. He continued in its employ until October of the same year, when he was informed by Feldmann, its president, that the de-

fendant, Transitone Automobile Radio Corporation, had been formed to take over the Automobile Radio Corporation and that he, Feldmann, was to act as president of the new organization for which plaintiff was to continue to work "with no change as in the past."

Plaintiff, acting upon this assurance, took up his duties with the new concern under his contract and in November and December was paid his salary by checks of the Philadelphia Storage Battery Company, which controlled defendant company and owned fifty-one per cent of its stock. His salary was paid semimonthly, as it had been by the old concern, and the work he did for the new company was identical with what he had done for the old one. Thereafter and until July, 1931, his salary was paid in the same way by the defendant.

In December, 1930, and in January or February, 1931, Feldmann requested plaintiff to give up his written contract, which plaintiff refused to do. In May, 1931, Feldmann showed plaintiff a letter which he had received from the sales manager of the Philadelphia Storage Battery Company suggesting that plaintiff enter into a commission and drawing-account arrangement in lieu of his salary for a limited period, from July 1, 1931, to January 1, 1932. In answer to plaintiff's objections to this Feldmann stated that plaintiff could try out the new arrangement for six months, and if it did not work out, at the end of that time he could go back to the old "arrangement." With this understanding plaintiff accepted the proposition.

In December, 1931, plaintiff was informed that defendant could do without a sales manager and an offer was made to him to go on the road as a salesman at a large decrease in salary. He replied that he would stand on his contract. Later in that month he had another talk with Feldmann, who endeavored to get him to accept the new proposal, which he again declined, insisting on his rights under the contract. On January 14, 1932, he received, according to his testimony, positive information

from defendant that it could give him nothing better than the proposed arrangement. This information was accompanied by a statement that he had better accept since he had no contract with defendant. He was not paid his semimonthly salary due on January 15, 1932, and quit his employment on that day.

Feldmann testified that plaintiff was not employed by defendant under the old contract and that he told plaintiff that the Philadelphia Storage Battery Company had no contracts with any of its employees. These statements and those of plaintiff raised a question of fact as to whether defendant through Feldmann, its president, had assumed the old contract. We think there was sufficient evidence to warrant the jury's finding that the contract had been assumed by defendant and that it was bound thereby. This was the ruling of the court below. It held, however, in entering judgment notwithstanding the verdict, that plaintiff failed to prove that he was discharged, that his testimony showed that he voluntarily left defendant's employ and that he could not recover because he did not tender performance after the alleged discharge. In the position it assumed the court relied upon McCahan's Est. (No. 1), 221 Pa. 186, and Guaranty Motors Co. v. Hudford Phila. Sales Co., 264 Pa. 557.

It seems to us that the court did not sufficiently weigh the effect of defendant's denial that there was any contract by which it was bound. The taking of this attitude by defendant was a repudiation and denial of the contract, and having in effect said there was no contract binding upon it, plaintiff had no alternative if he intended to rely on the contract but to quit his work. He was not required to tender performance under a contract the existence of which defendant denied. In terms Feldmann told plaintiff that he had no contract. "Performance or offer to perform by one party to a contract is excused when by the actions of the other it is manifest that it could not be accomplished": Weinglass v. Gibson, 304 Pa. 203, 206, and authorities cited. "In an ac-

tion for damages, the wrongful discharge must be averred as the breach of the contract, and as the fact constituting the cause of action. A formal dismissal need not, however, be alleged or proved, an allegation of the denial and repudiation of the contract being sufficient": 39 C. J. 98, citing Bedell v. Berwick, 142 Ga. 146, 82 S. E. 564; East Tennessee R. R. Co. v. Staub, 7 Lea (Tenn.) 397.

Our conclusion is that the court erred in entering judgment for defendant. While it discharged defendant's motion for a new trial, the opinion states that the court did not consider it on its merits.

The judgment for defendant is reversed and the record remitted for such further consideration of the motion for a new trial as the court may deem proper.